IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | |
|---|---|
| JHEN SCUTELLA, | ) |
| Plaintiff | ) 1:23-CV-00320-SPB-RAL |
| vs. | ) SUSAN PARADISE BAXTER<br>) United States District Judge |
| TRINITY FOOD SERVICES, WEXFORD<br>HEALTH SERVICES, DEPUTY WARDEN<br>BRYANT, J. EVANOVICH, MICHELLE<br>EARLEY, PA KANG, DR. OSUJI GIBSON,<br>NURSE ASHLEY, | ) RICHARD A. LANZILLO<br>) Chief United States Magistrate Judge<br>)<br>) REPORT AND RECOMMENDATION RE<br>) TRINITY DEFENDANTS' MOTIONS TO |
| Defendants | ) DISMISS<br>)<br>) ECF NOS. 51 AND 65 |

**I.    Recommendation**

Defendants Trinity Food Services and Jennette Evankovich have each filed a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 51 (Trinity); ECF No. 65 (Evankovich). For the reasons set forth in the following Report, it is respectfully recommended that the Trinity Defendants' motions be GRANTED in part and DENIED in part. Specifically, it is recommended the motions be denied (1) to the extent they seek dismissal based on the affirmative defense of failure to exhaust administrative remedies under the Prison Litigation Reform Act, but such denial should be without prejudice to the Trinity Defendants' right to reassert this defense based on a more complete record; and (2) as to Plaintiff's Fourteenth Amendment claim based on the nutritional inadequacies of the Trinity Defendants' dietary offerings.  The motions should be granted as to (1) Plaintiff's claim based on inadequate medical care; (2) Plaintiff's intentional infliction of emotional distress claim; and (3) Scutella's claims for injunctive and declaratory relief.

## II. Report

### A. Relevant Procedural History

Plaintiff Jhen Scutella ("Scutella"), an individual previously detained at the Erie County Prison ("ECP"), commenced this action against eight Defendants, including Trinity Food Services ("Trinity") and Jennette Evankovich (collectively, "Trinity Defendants").[1] *See* ECF No. 7 (Complaint). Trinity is a private entity contracted to provide food services at the ECP. Evankovich is a supervisor employed by Trinity.

Scutella claims that the Trinity Defendants denied him a nutritionally adequate diet that accounted for his prediabetic insulin resistant condition and thereby violated his rights under the Eighth, Fourteenth, and Fourth Amendments to the United States Constitution. He seeks redress of these violations under 42 U.S.C. § 1983. He asserts that Trinity is liable for these violations under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) and its progeny. Finally, Scutella asserts a state law intentional infliction of emotional distress claim against Trinity.

In support of their motions to dismiss, the Trinity Defendants argue that Scutella failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act, Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In the alternative, they argue that Scutella's Complaint fails to allege facts sufficient to support any of his claims. *See* ECF Nos. 52, 66 (supporting briefs). Scutella has filed a brief in opposition to Trinity's motion. ECF No. 62.

### B. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding

---

[1] The other Defendants are Wexford Health Service ("Wexford"), Michelle Earley, PA Kang Li, Dr. Osuji Gibson, and Nurse Ashley (collectively, "Wexford Defendants"), and ECP Deputy Warden Bryant. The Wexford Defendants have separately moved to dismiss the claims against them. Their motion was addressed in a separate Report and Recommendation. Deputy Warden Bryant was dismissed as a party by prior court order. ECF No. 67.

a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

In deciding the motion, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Because Scutella is proceeding *pro se*, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21

(1972). If the court can reasonably read his Complaint to state a valid claim upon which relief can be granted, it will do so despite any failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

### C. Factual Allegations

The following factual allegations of Scutella's Complaint pertaining to the Trinity Defendants are accepted as true for purposes of their motions to dismiss. Scutella's detention at the ECP commenced on February 7, 2023. Prior to his detention, Scutella had been diagnosed as "insulin resistant pre-diabetic." ECF No. 7 ¶ 14. He informed the prison intake nurse of his condition and his current medications. *Id.* During Scutella's detention, Trinity provided food trays at the ECP that were consistently undercooked or overcooked, and it failed to offer alternative proteins, vegetarian options, or fruit options. *Id.* ¶ 25. Scutella believes that Trinity's food trays did not provide the proper calorie intake necessary for good health. *Id.*¶ 30. Scutella once found a rock in his beans. *Id.* ¶ 35. To improve his diet, Scutella "proceeded to pursue a new religion, [R]astafarian, which mandates the diet to coincide with the proper nutrition of unprocessed foods with the nutritional value that is needed, but was denied multiple times…" *Id.* ¶ 26. Over nine months, he had monthly blood tests to monitor his health. These tests yielded abnormal results. *Id.* ¶ 27. Wexford ultimately recommended a medically approved diet. *Id.*

At some point, an unidentified medical provider discontinued Scutella's medically approved diet and his metformin medication, which regulated his blood sugar.[2] *Id.* ¶ 28. Over the next sixty days following these actions, Scutella gained eleven pounds. *Id.* ¶ 28. Scutella then asked Evankovich for fruit, but she denied the request, apparently because Trinity food trays are pre-made. *Id.* ¶ 29. Scutella went to Wexford with concerns that "his body did not feel normal…and that the food Trinity was servicing was inadequate, improper calorie intake, undercooked, overcooked, and there[']s no fresh fruit." *Id.* ¶ 30. Scutella alleges that "Trinity is deliberately indifferent to my medical needs. They do not serve me a diet consistent to my diagnosis. They serve no fruit[,] under and overcooked nutritionally inadequate food." *Id.* ¶ 37.

### D. Discussion

#### i. The record is insufficiently developed to assess the Trinity Defendants' exhaustion defense.

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging his conditions confinement. 42 U.S.C. § 1997e(a). This requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). An inmate's failure to exhaust, however, is an affirmative defense that a defendant must plead and prove, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), and, as such, it is non-jurisdictional and waivable. *See Andrews v. Behr*, 2023 WL 8809302, at *2 (W.D. Pa. Dec. 20, 2023) (citing *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018)). When raised by a defendant, exhaustion constitutes a

---

[2] Metformin is a drug that assists in controlling the amount of glucose (sugar) in the blood stream. National Library of Medicine, *Metformin*, MEDLINEPLUS (February 15 2024), https://medlineplus.gov/druginfo/meds/a696005.html#:~:text=Metformin%20is%20in%20a%20class,glucose%20made%20by%20your%20liver.

5

threshold issue the Court must address before reaching the merits of the case. *Andrews*, 2023 WL 8809302, at *2.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). An inmate's failure to comply with the requirements of the prison grievance process constitutes a procedural default that a defendant may raise to establish an exhaustion defense. *See Williams v. Wetzel et al.*, 2021 WL 5298872, at *5 (M.D. Pa. Nov. 15, 2021) (citing *Spruill v. Gillis*, 372 F.3d 218, 230-32 (3d Cir. 2004)). Likewise, prison officials have a reciprocal obligation to follow their own procedures, and their failure to do so may discharge a prisoner from any remaining obligations under the grievance system and cause his or her grievance to be considered fully exhausted. *See Shifflett v. Korszniak*, 934 F.3d 356, 365-367 (3d Cir. 2019) ("What is good for the goose is good for the gander"). Thus, for example, where "a prison fails to respond to a properly submitted ... appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable, and the prisoner has fully discharged the PLRA's exhaustion requirement." *Id. See also Andrews*, 2023 WL 8809302, at *7 (citing *Shifflett*).

The Trinity Defendants argue that Scutella admitted in his Complaint that he did not exhaust his administrative remedies. *See* ECF No. 52, pp. 3-4 ("These actions [of not appealing dismissal and filing suit one month after not receiving response to grievance request] are insufficient to establish that he exhausted his administrative remedies or was somehow prevented from doing so..."). But Scutella alleges that he requested a grievance form for his claim, but prison officials refused to provide one. ECF No. 7, ¶ 24. His allegations thus raise the potential

unavailability of the administrative remedies described in ECP's policies. Where prison officials frustrate a prisoner's access to administrative remedies, those remedies are considered "unavailable" and "deemed exhausted," and the prisoner is free to file suit in federal court. *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

In *Ross v. Blake*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. 632, 136 S.Ct. 1850, 1859-60 (2016).

In *Robinson*, the Court of Appeals for the Third Circuit held that the prison "rendered its administrative remedies unavailable to [the plaintiff] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." 831 F.3d at 154. In such circumstances, "filing suit [was the plaintiff's] only method to advance his claim." *Id.* If the record ultimately establishes that ECP personnel denied Scutella a grievance form for the claims presented in this case, this similarly will support a finding that his administrative remedies were unavailable. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).

Furthermore, dismissal under Fed. R. Civ. P. 12(b)(6) for failure to exhaust is only appropriate when it is clear from the face of the complaint that the plaintiff failed to exhaust available administrative remedies. *Escalera v. Harry*, 2016 WL 6694502, at *5 (M.D. Pa. Sept.

7

28, 2016) (citing *Thomas v. Brinich*, 579 Fed. Appx. 60, 62 (3d Cir. 2014)) ("dismissal based on [failure to exhaust] is only appropriate…where the complaint itself reveals the exhaustion defense on its face."); *Jones*, 549 U.S. at 215-216 (2007) (noting that failure to exhaust is an affirmative defense but may be a basis for dismissal if the complaint establishes this failure). "[C]ases in which failure to exhaust is appropriately raised on a motion to dismiss will be rare." *Escalera*, 2016 WL 6694502, at *5 (citing *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014)) (failure to exhaust may only be the basis for dismissal in those rare cases where it is clear from the face of the complaint).

Here, it is not apparent from the face of the Complaint that Scutella did not exhaust his administrative remedies by virtue of ECP officials having rendered those remedies unavailable. Accordingly, the present record does not support dismissal of this action based on the Trinity Defendants' exhaustion defense. The Court will therefore examine the merits of Scutella's claims and determine whether the Complaint alleges facts sufficient to support those claims.

### ii. The Complaint states a Fourteenth Amendment claim against the Trinity Defendants based on denial of adequate nutrition.

To prevail on his § 1983 claim, Scutella must establish that a person acting under the color of state law deprived him of a federally protected right. *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Scutella claims that the Trinity Defendants failed to provide him with a nutritionally adequate diet that accommodated his insulin-resistant, prediabetic medical condition. More specifically, he asserts that the Trinity Defendants provided no fruit, alternative

protein, or vegetarian food options.[3] Scutella claims that these failures violated his rights under the Fourth, Eighth, and Fourteenth Amendments.[4]

The Fourteenth Amendment's Due Process Clause governs claims based on the conditions of confinement of a pretrial detainee such as Scutella. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). The Fourteenth Amendment protects pretrial detainees from "any and all punishment." *Montgomery v. Aparatis Dist. Co.*, 607 Fed. Appx. 184, 187 (3d Cir. 2015). "The Constitution requires that inmates be provided with basic human needs, including a diet that provides 'adequate nutrition.'" *Valentine v. Kelsey*, 2020 WL 4253208, at *2 (D.N.J. July 23, 2020) (citing *Duran v. Merline*, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013)). A prison diet violates the Constitution where it poses an "immediate danger to the health and wellbeing of the inmates who consume it[.]" *Alpheaus v. Camden Cty. Corr. Facility*, 2017 WL 2363001, at *10 (D.N.J. May 31, 2017) (quoting *Duran*, 923 F. Supp. 2d at 720). "[T]he objective component" of a Fourteenth Amendment claim asks whether "the deprivation [was] sufficiently serious." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "Objectively, '[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation.'" *Duran*, 932 F. Supp. 2d at 720 (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). Furthermore, prison officials may not be held liable for violating an inmate's right to adequate nutrition unless the inmate shows that the officials acted with a sufficiently culpable state of mind. *Stevenson*, 495 F.3d at 68 (quoting *Wilson v. Seiter*, 501

---

[3] While Scutella's inadequate food claim against the Trinity Defendants is related to his medical neglect claim against the Medical Defendants, the claims are distinct and require different considerations.

[4] The Fourth Amendment, which prohibits unreasonable government searches and seizures, provides no basis for a claim under the facts alleged in this case. While the Eighth Amendment "deliberate indifference" standard may help inform the Fourteenth Amendment analysis, the latter applies to pretrial detainees. *See Montgomery v. Ray*, 145 Fed. Appx. 738, 740 (3d Cir. 2005) (vacating and remanding district court's entry of summary judgment for defendant premised on Eighth Amendment analysis in a case involving pretrial detainee's claims of inadequate medical care for consideration under the Fourteenth Amendment standard).

U.S. 294, 298 (1991)) ("Unconstitutional punishment typically includes both objective and subjective components.") The subjective element of a Fourteenth Amendment conditions of confinement claim may be inferred when the condition "is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Stevenson*, 495 F.3d at 68 (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

The Constitution does not require prison officials to cater to an inmate's dietary preferences. *See LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991); *McEachin v. McGuinnis*, 357 F.3d 197, 199–201 (2d Cir. 2004). Inmates do not have a constitutional right to a specific type of food. *Burgin v. Nix*, 899 F.2d 733, 734–35 (8th Cir. 1990). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Hamm v. DeKalb Cty.*, 774 F.2d 1569-70, 1575 (11th Cir. 1985). The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation. *See Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974). Furthermore, the Constitution does not require that prison food offerings adhere to USDA guidelines or any particular nutritional recommendations. *See Florer v. Bales-Johnson*, 752 F. Supp. 2d 1185, 1200 (W.D. Wash. 2010), *aff'd*, 473 Fed. Appx 651 (9th Cir. 2012); *Gonsalves v. DeVeau*, 2012 WL 6104788, at *2 (D. Conn. Dec. 7, 2012); *Ingram v. Atl. Cnty. Just. Fac.*, 2011 WL 3684806, at *5 (D.N.J. Aug. 23, 2011). But a diet devoid of fruits and vegetables may violate the Constitution if it is the regular prison diet. *See Rust v. Grammer*, 858 F.2d 411, 414 (8th Cir. 1988) ("a diet, such as this one, without fruits and vegetables might violate the eighth amendment if it were the regular prison diet").

In this case, Scutella alleges that Trinity's food offerings lacked fruit, a vegetarian option, and alternative protein options necessary to provide detainees a constitutionally sufficient diet. He

10

also asserts that these food offerings were inadequate to meet his individual nutritional and medical needs based on his insulin-resistant, prediabetic condition. Although his Complaint is somewhat unclear, Scutella appears to allege that Trinity's food offerings did not accommodate his medically approved diet. Scutella's allegations support a plausible inference that Trinity consistently maintained the foregoing diet deficiencies as a matter of policy and practice throughout his detention. As explained below, the foregoing allegations are minimally sufficient to state a claim against Trinity under the Fourteenth Amendment.

Although liability under 42 U.S.C. § 1983 cannot be based on vicarious liability or *respondeat superior*, *see Weaver v. Wellpath, LLC*, 2024 WL 3584579, at *6 (W.D. Pa. July 30, 2024), the Complaint is sufficient to state a claim against Trinity under the principles articulated in *Monell v. Dep't Soc. Servs. of Cty. of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that a municipality may be liable under § 1983 only when the execution of a government's policy or custom causes injury that the government is responsible for the deprivation of the plaintiff's constitutional right. *Id.* at 694. This standard also applies to private corporations, like Trinity, which provide government services, such as food services to inmates, through a municipal or state contract. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 n.4, 583 (3d Cir. 2003) (recognizing that "*Monell* applies to other private organizations faced with liability under § 1983"). Thus, to state a claim against a private corporation under § 1983, a plaintiff must allege a policy or custom that led to the constitutional violation. *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) (citing *Natale*, 318 F.3d at 583–84). The plaintiff must identify the policy or custom, attribute it to the corporation, and establish a causal link to the constitutional injury. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). A policy arises when a decisionmaker with final authority issues an official policy. *See Andrews v. City of Philadelphia*, 895 F.2d 1469,

1480 (3d Cir. 1990). A custom develops when practices, though not legally authorized, are "so permanent and well settled" that they effectively have the force of law. *Id.* at 1480.

The Complaint supports plausible inferences that the complete absence of fruit in its food offerings combined with its ongoing failure to provide offerings that accommodated his prediabetic insulin-resistant condition denied Scutella adequate nutrition consistent with the requirements of the Fourteenth Amendment. In addition, the Complaint supports plausible inferences that Trinity recognized these deficiencies but allowed them to continue as a matter of policy or standard practice based on cost considerations. Many of Scutella's allegations regarding his food do not support a constitutional violation. These include his allegation that his food was frequently overcooked or undercooked, that on one occasion he found a rock in his beans, and that Trinity's offerings did not include a vegetarian option. Nevertheless, his allegations regarding the complete absence of fruit from Trinity's food offerings and its inability or failure to meet the nutritional needs associated with his insulin-resistant, prediabetic condition are sufficient to raise a plausible claim. And, as the record is presently limited to the face of Scutella's Complaint, the Court cannot say that Trinity's limited food offerings were rationally related to a legitimate non-punitive government purpose. Scutella's Fourteenth Amendment claim against Trinity based on inadequate nutrition should therefore survive the motions to dismiss and proceed to discovery.

The viability of the claim against Evankovich is a closer call. The Complaint identifies her as a supervisor for Trinity and alleges that, on a single occasion, Scutella asked her for fruit, but she declined, apparently because food trays are premade. In any § 1983 action, the plaintiff must allege facts to demonstrate each defendant's personal involvement in the underlying constitutional violation. *See Victor v. Little*, 2024 WL 4228145, at *4 (E.D. Pa. Sept. 18, 2024). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*,

12

556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). Without specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation); *Happel v. Bishop*, 2024 WL 1508561, at *9 (W.D. Pa. Feb. 22, 2024), *report and recommendation adopted*, 2024 WL 1003902 (W.D. Pa. Mar. 8, 2024). *See also Holloway v. Irwin*, 2024 WL 4980759, at *3 (W.D. Pa. Oct. 29, 2024), *report and recommendation adopted*, 2024 WL 4866455 (W.D. Pa. Nov. 22, 2024). To satisfy this pleading burden, Scutella must allege facts to support that Evankovich either "participated in violating [his] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Del Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Here, Scutella's allegations regarding Evankovich's authority and conduct are thin but still minimally sufficient to support her personal involvement in the alleged violation of his Fourteenth Amendment rights. Whether Scutella's allegations have adequate evidentiary support is a question that must await a more developed record. Accordingly, the Trinity Defendants' requests for dismissal of Scutella's Fourteenth Amendment conditions-of-confinement claim based on nutritionally inadequate food offerings should be denied and this claim should proceed to discovery against both Trinity and Evankovich.

### iii. The Complaint fails to state a claim against the Trinity Defendants based on inadequate medical care.

To the extent Scutella's Complaint asserts a claim against the Trinity Defendants based on inadequate medical care, it fails as a matter of law. Trinity is a food service provider at the ECP. It is not a medical provider. Although the Trinity Defendants may have been responsible for providing food offerings that satisfied Scutella's dietary requirements as determined and specified by medical personnel, the Complaint includes no allegations to support that the Trinity Defendants were responsible for determining those dietary requirements or any other medical need of Scutella. Absent allegations to support that nonmedical personnel had reason to believe (or actual knowledge) that prison medical personnel were mistreating (or not treating) a prisoner, they cannot be found to have had the requisite mental state to support liability under the Fourteenth or Eighth Amendment. *See Spruill*, 372 F.3d at 236. The Complaint acknowledges that Scutella was consistently under the care of prison medical personnel. It includes no allegations to support that the Trinity Defendants were responsible for determining medically appropriate diets or that they had reason to believe that medical personnel were failing to do so. Based on the allegations of the Complaint, any Fourteenth Amendment claim Scutella has against the Trinity Defendants relating to their food offerings must be based on his right to adequate nutrition. The Complaint alleges no factual basis for a separate claim against the Trinity Defendants based on inadequate medical care. To the extent the Complaint asserts such a claim, it should be dismissed with prejudice.

### iv. Scutella's intentional infliction of emotional distress ("IIED") claim is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Claims in this action are subject to *sua sponte* screening for dismissal pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A because Scutella "is a prisoner proceeding *pro se* and is seeking redress from a governmental employee or entity." *Sanchez v. Coleman*, 2014 WL

14

7392400, at *4 (W.D. Pa. Dec. 11, 2014) (citing *Stackhouse v. Crocker*, 266 Fed. Appx. 189, 190 (3d Cir. 2008). The Prison Litigation Reform Act ("PLRA") requires a district court to assess a civil complaint in which a prisoner proceeds *in forma pauperis* (28 U.S.C. § 1915(e)(2)) or seeks redress against a governmental employee or entity (28 U.S.C. § 1915A). *See e.g., Sanchez*, 2014 WL 7392400, at *4; *Hill v. Carpenter*, 2011 WL 8899478, at *2 (M.D. Pa. Aug. 3, 2011), *report and recommendation adopted*, 2012 WL 3779364 (M.D. Pa. Aug. 30, 2012) (citing 28 U.S.C. § 1915(e)(2)(B)(ii) ("This Court has a statutory obligation to conduct a preliminary review of pro se complaints brought by plaintiffs given leave to proceed in forma pauperis in cases which seek redress against government officials.").

Among other things, the PLRA requires the Court to dismiss any action in which the Court determines that the action is "frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *Muchler v. Greenwald*, 624 Fed. Appx. 794, 796-97 (3d Cir. 2015). A frivolous complaint is one which is either based upon an indisputably meritless legal theory (such as when a defendant enjoys immunity from suit) or based upon factual contentions which are clearly baseless (such as when the factual scenario described is fanciful or delusional). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The determination as to whether a complaint fails to state a claim for screening purposes is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 Fed. Appx. 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

Scutella's Complaint includes an IIED claim under Pennsylvania state law, but it fails to identify which Defendant or Defendants are the subject of the claim. In his sur-reply, Scutella specifies that the claim is asserted against Wexford and Trinity. *See* ECF No. 62, p. 10. However,

15

the Complaint's factual allegations are insufficient to support an IIED claim against either Defendant.

To state an IIED claim, a plaintiff must allege facts to support that: (1) the defendant's conduct was extreme and outrageous; (2) his conduct caused the plaintiff severe emotional distress; and (3) he acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217-18 (3d Cir. 2001) (citing Restatement (Second) of Torts § 46 (1965)). *See also Robinson v. Nat'l R.R. Passenger Corp.*, 821 Fed. Appx. 97, 102 (3d Cir. 2020). Scutella faces a high bar to support the "extreme and outrageous" conduct element of the claim. Extreme and outrageous conduct is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 n.5 (Pa. Super. Ct. 2004) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). "[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy*, 720 A.2d at 754 (quoting Restatement (Second) of Torts § 46 cmt. d). "It is the court's responsibility to determine if the conduct alleged in a cause of action reaches the requisite level of outrageousness." *Andrews*, 895 F.2d at 1487. Because Scutella's allegations do not remotely approach the threshold necessary to support a finding of outrageous conduct, his IIED claim against Trinity should be dismissed pursuant to the Court's screening authority under 28 U.S.C. §1915.

### v. Scutella's claims for injunctive and declaratory relief should be dismissed as moot.

Scutella is no longer in the custody of the ECP and is no longer receiving food services from the Trinity Defendants. The Court therefore has no ability to order injunctive or declaratory relief against the Trinity Defendants relative to his dietary requirements. It is "axiomatic that the federal courts may not decide an issue unless it presents a live case or controversy." *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the [claim] must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996). Courts have widely recognized that a request for injunctive or declaratory relief should generally be denied as moot where the plaintiff is no longer subject to the allegedly unconstitutional condition. *Id. See also Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge."). Similarly, an inmate's transfer or release from a correctional institution moots any claims for injunctive or declaratory relief against the offending institution. *See, e.g., Rosa-Diaz v. Harry*, 2017 WL 6806795, at *5 (M.D. Pa. Dec. 6, 2017) (inmate's transfer from the offending prison facility rendered his request for injunctive relief moot); *Sutton v. Rasheed*, 323 F.3d 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots [his] equitable and declaratory claims."). Because Scutella has been released from the ECP and is no longer subject to the Trinity Defendants' policies and actions regarding food offerings, his claims for injunctive and declaratory relief should be dismissed as moot.

### E. Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). And though "the grant or denial of an opportunity to amend is within the discretion of the District Court," it may not "outright refus[e] to grant the leave without any justifying reason appearing for the denial." *Id*. These instructions apply equally to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, any attempt by Scutella to state a claim against the Trinity Defendants based on inadequate medical care would be futile. The same is true regarding his claims for injunctive and declaratory relief against the Trinity Defendants. These claims have been rendered moot because of Scutella's release from the ECP.

### F. Conclusion

For the foregoing reasons, it is recommended that the Trinity Defendants' motions to dismiss be GRANTED in part and DENIED in part as follows.

The motions should be denied (1) to the extent they seek dismissal based on the affirmative defense of failure to exhaust administrative remedies under the PLRA, but such denial should be without prejudice to their right to reassert the defense based on a more complete record; and (2) as to Scutella's Fourteenth Amendment claim based on the nutritional inadequacies of the Trinity Defendants' dietary offerings. The motions should be granted as to (1) Scutella's claim based on inadequate medical care; (2) Scutella's IIED claim; and (3) Scutella's claims for injunctive and

declaratory relief. These claims should be dismissed with prejudice as any attempt to amend the complaint regarding these claims would be futile.

### III. Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 11th day of April 2025.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE